# EXHIBIT 1
# PART 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DEBRA MATTHEWS and AGNES PALKA )
individually and on behalf of all others )
similarly situated, )
                                 )     No. 05 C 6666
               Plaintiffs, )
                                 )     Judge David Coar
        v. )     Magistrate Judge Nan Nolan
                                 )
BP CORPORATION NORTH AMERICA INC., )
BP RETIREMENT ACCUMULATION PLAN, )
BP INVESTMENT COMMITTEE, JOHN )
DOES 1-100, )
                                 )
              Defendants. )

### DECLARATION OF MICHAEL A. WEINBAUM

      I, Michael A. Weinbaum, declare under the penalty of perjury that the following

is true and correct:

      1.      I have personal knowledge of the matters stated herein based on my direct

involvement in the matters described below and my review of records maintained by

Defendants in the course of their regularly conducted business activities.

      2.      I am an attorney with BP Corporation North America Inc., the plan

sponsor for the BP Retirement Accumulation Plan (the "Plan").

      3.      On August 15, 2001, Randall Nichols filed a class action lawsuit alleging

ERISA violations in the United States District Court for the Northern District of Illinois

entitled *Nichols v. BP America Retirement Accumulation Plan,* No. 01 C 6238. A true

and correct copy of the *Nichols* Complaint, which challenged various "cash balance"

provisions of the Plan, is attached hereto. *See* Attachment A.

      4.      In or around June 2002, the parties agreed to settle the claims raised in the

*Nichols* litigation. A true and correct copy of the Class Action Settlement Agreement is

1-CH/168822.2

EXHIBIT
_____
1

attached hereto as Attachment B. On June 14, 2002, the *Nichols* plaintiffs moved for conditional certification of a settlement class and for preliminary approval of the Class Action Settlement Agreement. True and correct copies of these documents are attached hereto as Attachment C.

5.      Notice was sent to all *Nichols* class members including Debra Mathews and Agnes Palka on July 26, 2002. *See* Attachment D. Mathews and Palka were former employees of BP America who separated from employment in 2000. They received lump sum distributions of their cash balance pension benefits shortly thereafter, at which time they ceased to be participants in the BP Retirement Accumulation Plan.

6.      On September 27, 2002, the district court entered an order granting final approval of the class action settlement. *See* Attachment E. In compliance with the terms of the Class Action Settlement Agreement, the Plan paid distributions totaling $71,000,000 to more than ten thousand class members, including Debra Mathews and Agnes Palka. A true and correct copy of the Plan's Report of Compliance is attached hereto as Exhibit F. These distributions included payments in the gross amounts of $2,384.87 to Mathews and $478.72 to Palka.

7.      In the Court's September 27, 2002 Order approving settlement, Judge Pallmeyer dismissed the case with prejudice and entered a final judgment. *See* Attachment E.

I declare under penalty of perjury that the foregoing is true and correct.

Michael A. Weinbaum

Executed on: _March 13, 2006_

# ATTACHMENT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RANDALL NICHOLS, on behalf of himself and )     **JUDGE PALLMEYER**
all others similarly situated, )
                              )       **01C   6238**   **DOCKETED**
    Plaintiff, )
                              )                                                 AUG 1 5 2001
vs. ) Civil No.
                              )       **MAGISTRATE JUDGE DENLOW**
BP AMERICA RETIREMENT )
ACCUMULATION PLAN, )
                              ) COMPLAINT - CLASS ACTION
    Defendants. )

<u>COMPLAINT</u>

      Comes now Plaintiff, Randall Nichols, by his attorneys, and for his Complaint states as

follows:

<u>The Parties, Jurisdiction and Venue</u>

      1.  Plaintiff, Randall Nichols, is a participant in the BP America Retirement

Accumulation Plan within the meaning of Section 3(7) of the Employee Retirement Income

Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002(7).

      2.  Defendant, the BP America Retirement Accumulation Plan (the "Plan"), is a "defined

benefit plan" within the meaning of the ERISA Section 3(35), 29 U.S.C. §1002(35).

      3.  Jurisdiction is proper in this Court under 28 U.S.C. §1331 and 29 U.S.C. §1132(e)(1).

      4.  Venue is proper in this Court under 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2), in

that the Plan is administered here and/or the Plan may be found here.

<u>Background</u>

      5.  Mr. Nichols commenced participation in the Plan in October 1981.





6.  Each year after 1988 that Mr. Nichols was an active participant in the Plan, the Plan credited a portion of his pay as well as interest credits to his "cash balance account."

7.  Under Plan Section 3.4, and until such time as the participant elects to receive a distribution of his or her pension benefits, the annual interest credit provided to a participant's cash balance account is an amount equal to the average annual yield on one-year Treasury securities (rounded up to the nearest quarter percent (.25%)), plus one percent (1%).

8.  In November 1994 Mr. Nichols separated from employment with BP America, Inc., or the legal predecessor and/or subsidiary thereof.

9.  Mr. Nichols ultimately elected to receive his accrued benefits from the Plan in the form of a lump sum distribution.

10.  In early 1995, the Plan distributed $76,829.37 to Mr. Nichols, which was the amount in his cash balance account at that time.  Mr. Nichols was 48 years old at the time.

11.  In calculating the amount of Mr. Nichols' lump sum distribution, the Plan did not project the amount of his cash balance account to his normal retirement age (65) at the interest crediting rate the account would have received had it remained in the Plan.

12.  If the Plan had projected Mr. Nichols' cash balance account to age 65 at the interest crediting rate the account would have otherwise received and then determined the present value of Mr. Nichols' age 65 benefit pursuant to ERISA §§ 204(c)(3) and 205(g), Mr. Nichols' benefit expressed as a lump sum would have exceeded the lump sum distribution he received.

13.  Mr. Nichols did not exhaust the administrative remedies provided under the terms of the Plan prior to initiating this lawsuit because his claims are based solely on discrete and non-fact intensive statutory violations of ERISA.  Furthermore, exhaustion would have been futile

2

Case 1:01-cv-06238    Document 1    Filed 08/14/2001    Page 3 of 8

because the Plan document does not provide for the calculation Mr. Nichols asserts herein is required by ERISA.

Class Action Allegations

14. The methodology used to calculate Mr. Nichols' lump sum distribution is systemic and affects thousands of participants in the Plan, making joinder of all claims impracticable.

15. Mr. Nichols' claims are typical of those of the members of the Class because Defendants have used the same methodology to calculate all Class members' lump sum distributions.

16. Common questions of law and fact predominate, namely, whether Defendants correctly calculated lump sum distributions paid to the Class members.

17. Mr. Nichols will fairly and adequately represent the interests of the members of the Class. His interests are the same, and not in conflict with, the other members of the Class.

18. Mr. Nichols' counsel is experienced in ERISA class action litigation.

19. There is a risk that the prosecution of separate actions would establish incompatible standards of conduct for the administration of the Plan(s). Moreover, adjudication of whether the Plan(s) properly computed the benefits owed to the Class members would as a practical matter be dispositive of the interests of the Class.

20. The Defendants have computed the lump sum distribution of each participant using the same methodology. Plaintiff seeks injunctive and corresponding declaratory relief under ERISA § 502(a)(3).

21. Mr. Nichols requests the Court certify the following Class under Rule 23(b)(1) and 23(b)(2), Fed. R. Civ. P.:

3

"Each participant in the BP America Retirement Accumulation Plan who
received a lump sum distribution of his or her cash balance account from
the Plan at any time after 1988."

<u>Count I (Violation of ERISA §§204(c)(3) and 205(g))</u>

22. Mr. Nichols incorporates the allegations of all preceding paragraphs by reference.

23. Treasury Regulation §1.417(e)-1(d) implements the requirements of ERISA
§§204(c)(3) and 205(g), and requires that the amount of any optional form of benefit payable
from a defined benefit plan have a value no less than the present value of the normal retirement
benefit.

24. A lump sum distribution is an optional form of benefit within the meaning of
Treasury Regulation §1.417(e)-1(d).

25. By failing to compute the amount of Mr. Nichols' normal retirement benefit as
described in paragraphs 10 and 11 above, the Plan failed to provide Mr. Nichols with a lump sum
distribution in an amount at least equal to the present value of his accrued normal retirement
benefit payable at normal retirement age.

26. The payment of a lump sum distribution in an amount less than the present value of
the Class members' normal retirement benefits violates ERISA §§ 204(c)(3) and 205(g)(3), and
Internal Revenue Code §417(e)(3), as implemented by Treasury Regulation §1.417(e)-1(d).

27. Pursuant to ERISA §502(a)(3), Mr. Nichols brings this action against the Plan to
redress violations of provisions of Title I of ERISA, to enforce such ERISA provisions, and for
all appropriate equitable relief, including restitution.

<u>Count II (Violation of ERISA §203(a))</u>

28. Mr. Nichols incorporates the allegations of all preceding paragraphs by reference.

4

Case 1:01-cv-06238    Document 1    Filed 08/14/2001    Page 5 of 8

29. The Plan's computation of lump sums as described above resulted in an impermissible forfeiture of benefits prohibited by ERISA §203(a) and Internal Revenue Code §411(a), as implemented by Treasury Regulation §§1.411(a)-4 and 4T, in that the Plan conditioned the right to receive the higher interest crediting rate on Mr. Nichols not taking a distribution prior to reaching age 65.

30. Pursuant to ERISA §502(a)(3), Mr. Nichols brings this action against the Plan to redress violations of provisions of Title I of ERISA, to enforce such ERISA provisions, and for all appropriate equitable relief, including restitution.

## Prayer for Relief

WHEREFORE, Plaintiff Randall Nichols prays for the following relief:

a)      Certification of this case as a class action;

b)      Judgment against the Plan and in favor of Plaintiff and the Class on all claims herein;

c)      Restitution from the Plan in an amount sufficient to pay Plaintiff and the Class the difference between the lump sum distributions they received and the amount they would have received had the Plan complied with ERISA;

d)      A permanent injunction preventing the Plan from calculating future lump sum distributions in violation of ERISA as described herein;

e)      Pre- and post- judgment interest;

f)      Attorneys' fees and costs pursuant to the common fund doctrine or any other applicable law; and

g)      Any other relief this Court deems just, proper and equitable.

Respectfully submitted,

George A. Zelcs
Carr, Korein, Tillery, Kunin, Montroy, Cates,
Katz & Glass, LLC
Three First National Plaza
70 West Madison Street, Suite 410
Chicago, Illinois 60602
(312) 641-9750
(312) 641-9751

Steven A. Katz
Douglas R. Sprong
Carr, Korein, Tillery, Kunin, Montroy, Cates,
Katz & Glass, LLC
10 Executive Woods Ct
Belleville, IL 62226
(618) 277-1180
(618) 277-4676 (facsimile)

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383
(303) 296-6652 (facsimile)

Attorneys for Plaintiff

Civil Cover Sheet                                              Page 1 of 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

**DOCKETED**

AUG 1 5 2001

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

| | |
|---|---|
| **Plaintiff(s): Randall Nichols, on behalf of himself and all others similarly situated** | **Defendant(s): BP America Retirement Accumulation Plan** |
| County of Residence: Cuyahoga County, Ohio | County of Residence: |
| Plaintiff's Atty:  George A. Zelcs<br>Carr, Korein, Tillery, Kunin, Montroy, Cates, Katz & Glass, LLC<br>410 Three First National Plaza, 70 West Madison Street, Chicago, IL 60602<br>(312) 641-9750 | Defendant's Atty:  **JUDGE PALLMEYER** |

**01C 6238**

MAGISTRATE JUDGE DENLOW

**II. Basis of Jurisdiction:**        3. Federal Question (U.S. not a party)

**III. Citizenship of Principle Parties (Diversity Cases Only)**

      Plaintiff:-**N/A**

      Defendant:-**N/A**

FILED-ED4
01 AUG 14 PM 2: 50
CLERK
U.S. DISTRICT COURT

**IV. Origin :**                **1. Original Proceeding**

**V. Nature of Suit:**        **890 Other Statutory Actions**

**VI.Cause of Action:**        **ERISA §204 (c)(3) 29 U.S.C §1054 (c)(3); ERISA §205(g)(3) 29 U.S.C. §1055 (g)(3); ERISA §502 (a)(3) 29 U.S.C. §1132 (a)(3); ERISA §203(a) 29 U.S.C. §1053(a)**

**VII. Requested in Complaint**

      Class Action: **Yes**

      Dollar Demand:

      Jury Demand: **No**

**VIII.** This case **Is NOT** a refiling of a previously dismissed case. (If yes case number ___ by Judge ___)

Signature:

Date: 8/14/01

If any of this information is incorrect, please go back to the Civil Cover Sheet Input Form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**                Revised: 06/28/00

1-2

**NOTE:** When the print dialogue box appears, be sure to uncheck the Annotations option.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

Eastern Division

JUDGE PALLMEYER



Double click on question mark for appearance form instructions

In the Matter of

Randall Nichols, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

BP America Retirement Accumulation Plan,

Defendants

MAGISTRATE JUDGE DENLOW

DOCKETED

Case Number:

# 01C  6238

AUG 1 5 2001

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Randall Nichols, on behalf of himself and all others similarly situated.

01 AUG 14 PM 2:51    FILED-ED4

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME<br>George A. Zelcs | NAME |
| FIRM<br>Carr, Korein, Tillery, Kunin, Montroy, Cates, Katz & | FIRM |
| STREET ADDRESS<br>410 Three First National Plaza, 70 West Madison Stre | STREET ADDRESS |
| CITY/STATE/ZIP<br>Chicago, Illinois 60602 | CITY/STATE/ZIP |
| TELEPHONE NUMBER<br>(312) 641-9750 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER<br>3123738 | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR?          YES ✓   NO ☐ | MEMBER OF TRIAL BAR?          YES ☐   NO ☐ |
| TRIAL ATTORNEY?          YES ✓   NO ☐ | TRIAL ATTORNEY?          YES ☐   NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?          YES ☐   NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR?          YES ☐   NO ☐ | MEMBER OF TRIAL BAR?          YES ☐   NO ☐ |
| TRIAL ATTORNEY?          YES ☐   NO ☐ | TRIAL ATTORNEY?          YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?          YES ☐   NO ☐ | DESIGNATED AS LOCAL COUNSEL?          YES ☐   NO ☐ |

1-3

# ATTACHMENT B

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

**FILED**

| | |
|---|---|
| RANDALL NICHOLS, on behalf of himself) | JUN 1 4 2002 |
| and all others similarly situated, ) | |
| ) | JUDGE ~~~~~ ..iEYER |
| Plaintiff, ) | UNITED STATES DISTRICT COURT |
| ) | |
| vs. ) | No. 01 C 6238 |
| ) | |
| BP AMERICA RETIREMENT ) | Judge Pallmeyer |
| ACCUMULATION PLAN, ) | |
| ) | **DOCKET** |
| Defendant. ) | JUL 0 1 ? |

### CLASS ACTION SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT AND RELEASE** ("Agreement") is entered into by and between Plaintiff and the Class of individuals he seeks to represent (the "Class"), and Defendant BP America Retirement Accumulation Plan (the "Defendant" or "Plan"), with reference to the following facts:

### Recitals

A.    The Plan enters into this Agreement on behalf of itself and its sponsor and all of their current and former parent corporations, subsidiaries, divisions, affiliated and related entities, and each of their fiduciaries, administrators, executors, directors, officers, members, employees, agents, representatives, attorneys, trustees, conservators, successors-in-interest and assigns. Plaintiff enters into this Agreement on behalf of himself and the Class he seeks to represent and each of the spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns of the Plaintiff and the Class members, as applicable and without limitation.

1



*26*

B.    On August 14, 2001, Plaintiff filed a complaint in this Court captioned Randall
Nichols v. BP America Retirement Accumulation Plan, Cause No. 01 C 6238 ("the Litigation"),
contending that the Plan miscalculated his lump sum pension distribution, and the lump sum
distributions of the Class, by failing to project cash balance accounts to age 65 at an interest rate that
did not understate the value of the Plan's interest crediting rates and then discount the projected
balances at an interest rate(s) required by Internal Revenue Code § 417(e).  During the course of the
Litigation, Plaintiff also claimed that the Defendant did not administer the Plan in accordance with
its terms.

C.    Defendant has denied and continues to deny all of the material allegations made by
Plaintiff in the Litigation, and has denied and continues to deny any and all liability and damages
to anyone with respect to the alleged facts or causes of action asserted in the Litigation.
Nevertheless, without admitting or conceding any liability or damages whatsoever, Defendant has
agreed to settle the Litigation, on the terms and conditions set forth in this Agreement, to avoid the
burden, expense, and uncertainty of continuing the Litigation; to avoid the diversion of resources and
personnel required by continuing the Litigation; and to settle any and all claims, disputes and
controversies between the Parties.  Defendant has, therefore, determined that it is desirable and
beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in
this Agreement.

D.    The purpose of the Agreement is to forever settle and compromise any and all claims,
disputes and controversies of any kind or nature whatsoever, whether known or unknown, against
Defendant or any of the persons identified in the first sentence of paragraph A above on the basis

2

of or arising out of or related to, in whole or in part, the determination or payment of lump sum distributions by the Plan, including those claims that Plaintiff or the Class have raised or could have raised in the Litigation.

     E.    Class Counsel has analyzed and evaluated the merits of the claims asserted or raised against Defendant in the Litigation, and the impact of this Agreement on Plaintiff and the Class. Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery which is not as good as the settlement for members of the Class and would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this settlement is in the best interests of the Class.

     F.    As a result of these and other considerations, the Parties have agreed to settle the Litigation as provided for herein.

     NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereby agree to a full and complete settlement of the Litigation on the following terms and conditions:

## I. DEFINITIONS

     **1.01 Defendant.** "Defendant" or "Plan" shall mean the BP America Retirement Accumulation Plan (Plan No. 001), as amended from time to time, and all of the individuals and entities to whom reference is made in the first sentence of paragraph A of the Recitals herein.

     **1.02 Plaintiff.** "Plaintiff" shall mean and include Randall Nichols and his spouse, children,

3

representatives, heirs, administrators, beneficiaries, executors, conservators, attorneys and assigns as applicable and without limitation.

**1.03 Class.** "Class" shall mean each participant, beneficiary or alternate payee under the Plan who has received or applied for a lump sum distribution from the Plan on or after January 1, 1989 and to and including the date of Preliminary Approval. It shall also include any spouse, children, representatives, heirs, administrators, beneficiaries, alternate payees, executors, conservators, attorneys and assigns of a Class member, as applicable and without limitation, of such persons. Provided, however, the Class shall not include any participants in the Plan who received a lump sum distribution from the Plan where such lump sum was not derived in whole or in part from an "Account" established for the participant under the Plan on or after January 1, 1989 and before January 1, 2002. Provided also, however, that no Class member can receive a payment under the terms of this settlement to the extent such payment, combined with his or her original distribution from the Plan, would exceed the amount allowed under Internal Revenue Code § 415. Provided also, however, that a person who is otherwise a Class member shall have such status for purposes of this settlement even though the amount of the payment to him or her is limited by the preceding sentence or if payment is postponed under Section 4.02(a) of this Agreement or under the terms of the Plan. "Account" shall have the meaning given to it in the Plan.

**1.04 Parties.** "Parties" shall mean and refer to Defendant, Plaintiff and the Class, as defined herein, and includes all of their attorneys acting on their behalf.

**1.05 Class Counsel.** "Class Counsel" means Steven A. Katz and Douglas R. Sprong, Carr Korein Tillery LLC, Three First National Plaza, 70 West Madison Street, Suite 410,

4

Chicago, IL 60602, and William K. Carr, Esq., 2222 E. Tennessee Ave., Denver, CO 80209.

**1.06 Preliminary Approval.** "Preliminary Approval" means that the Court has entered an Order Granting Preliminary Approval.

**1.07 Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the order entered by the Court preliminarily approving the terms and conditions of this Agreement, including the manner and timing of providing notice to the Class, the time period for objections, and the date for hearing of the motion for Final Approval of the settlement.

**1.08 Judgment.** "Judgment" means a judgment entered by the Court pursuant to Federal Rules of Civil Procedure, Rule 68, which judgment is entered on an order entered by the Court dismissing the Litigation and which order approves the fairness, reasonableness and adequacy of this Agreement after hearing on the Motion for Judgment and Final Approval.

**1.09 Final Approval.** "Final Approval" means that all of the following have occurred:

(a)     The Court has entered the Judgment as defined in Section 1.08; and

(b)     The Judgment has become a "Final Judgment." The Judgment shall be a "Final Judgment" upon the later of the following to occur:

        (i)     Expiration of the time for seeking rehearing or reconsideration and/or appellate review without any rehearing, reconsideration and/or appellate review having been filed or otherwise instituted; or

        (ii)    Exhaustion of any and all avenues of rehearing, reconsideration and appellate review, if rehearing, reconsideration or appellate review is sought, and no further rehearing, reconsideration or appellate review is permitted, or the time for seeking such review has expired and the Judgment has not been modified, amended or reversed in any way.

**1.10  Date of Final Judgment.** "Date of Final Judgment" shall mean the date the Judgment becomes a Final Judgment pursuant to Section 1.09 above.

**1.11  Settlement Fund.** "Settlement Fund" means $71,000,000.00 of the assets of the Plan.

**1.12  Net Settlement Fund.** "Net Settlement Fund" means the Settlement Fund less the total amount of base payments pursuant to Section 2.02(a) hereof and the amount awarded by the Court for attorneys' fees, Administrative Expenses and costs.

**1.13  Interest.** "Interest" means interest credited at the interest crediting rate set forth in the Plan as defined in Section 3.4 of the Plan, which currently is five percent (5%).  Provided, however, that the word "interest" shall have the meaning ascribed to it in the context in which it is used. Interest will accrue on all or part of the Settlement Fund while it remains undistributed under the terms of this Agreement, from the date the Court has entered Judgment in accordance with this Agreement, through the date of payment of attorneys' fees, Administrative Expenses of this settlement, and costs on those amounts, and on such other remaining amounts as may remain until the Distribution Date as defined pursuant to Section 4.02 below.  Provided, however, in the case of a Class member that elects to receive the settlement distribution in an annuity instead of a lump sum, or to defer payment of the lump sum until a later date, Interest will stop accruing on that Class member's settlement amount on the date that person makes that election.  There shall be no other interest paid under this Agreement.

**1.14  Singular/Plural.** The plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be.

**1.15  Claim.** "Claim" means a written document or such other writing containing sufficient

6

information to enable Class Counsel and Defendant to establish from the submission that the

individual is a Class member or someone otherwise entitled to receive a payment and the amount

of the payment under this Agreement.

**1.16 Administrative Expenses.**  Administrative Expenses shall include only the hard costs

of accomplishing a particular task and shall not include expert fees or costs, attorneys' fees or costs

or any other litigation or overhead costs, except those directly related to the determination and

compilation of a database of members of the Class for which Class counsel are responsible.

## II. GENERAL TERMS OF THE SETTLEMENT

**2.01 Purpose of Settlement.**  This Agreement shall not be construed by anyone as an

admission of any liability of any kind by Defendant or any of the persons referred to in the first

sentence of paragraph A of the Recitals. This Agreement is being entered into by the Plan solely to

settle and compromise any and all disputes between the Parties as described more fully herein.

**2.02 Settlement Benefits, Attorneys' Fees and Costs.**

(a)      As and for the settlement benefit of the Class:

Each Class member who received a Lump Sum distribution from the Plan at least in part

attributable to an Account established by the Plan prior to January 1, 2002, will receive a base

payment of $500 plus the benefit, if any, attributable to the Class member's proportional share of

the Net Settlement Fund, with such proportional share to be determined as follows:  (1) projecting

the Class member's cash balance Account as of his original date of distribution to age 65, using the

lesser of the average of the Plan's Interest crediting rate for the last five years or 5.5%;  (2)

converting the projected amount from (1) to a single-life annuity using the Plan's applicable §417(e)(3) interest and mortality factors as of January 1, 1999 (for distributions occurring prior to the Plan's adoption of GATT) or January 1, 2000 (for distributions occurring after the Plan's adoption of GATT); (3) determining the present value of the annuity determined in (2) using the Plan's applicable § 417(e)(3) interest and mortality factors as of January 1, 1999 (for distributions occurring prior to the Plan's adoption of GATT) or January 1, 2000 (for distributions occurring after the Plan's adoption of GATT); (4) reducing the amount produced in (3) (but not below zero) by subtracting the Class member's cash balance Account as of his original date of distribution from the amount produced in (3); (5) increasing the amount in (4) with interest, compounded annually, at the interest crediting rate set forth and defined in Section 3.4 of the Plan as in effect during the period beginning on the Class member's original date of distribution to the date Final Judgment is entered; (6) creating a fraction whose numerator is the amount determined under (5) for the Class member and whose denominator is the sum of the amounts determined under (5) for all Class members; (7) multiplying the fraction produced in (6) by the amount of the Net Settlement Fund.

(b)     The Defendant will distribute the settlement payment to which each Class member is entitled under the terms of this Agreement. All Administrative Expenses associated with such distributions will be at Defendant's expense. Defendant shall be solely responsible for determining the amount of tax withholdings, if any, required from all distributions and for tax reporting required with respect to distributions. Distribution of settlement payments may be effected through the Plan or through a subfund, special purpose trust or other vehicle created for such purpose which serves as a conduit for Plan assets and which preserves the tax treatment to Class members of payments

8

from the Plan. Creation and administration of any such subfund, special purpose trust or other vehicle will be treated as part of this settlement.

(c)    Subject to the timely submission of any required election and/or consent by the Class members or their beneficiaries and to Section 4.02 below, the Defendant will exert its best effort to commence the distribution to each living Class member within six (6) months of the date of Final Judgment. In any case in which (i) a Class member is deceased, (ii) there is a dispute as to the correct amount of the distribution to which the Class member is entitled pursuant to this Agreement, (iii) there is a dispute as to how the distribution is to be allocated between the Class member and any alternate payee pursuant to a Qualified Domestic Relations Order, (iv) the Class member's mailing address, as it appears in Defendant's database records, is inaccurate, (v) Defendant has not received a response from the Class member sufficient to permit Defendant to make the distribution, or (vi) the Class member is a Current Participant Class member as defined in Section 4.02(a) hereof, or (vii) circumstances reasonably require a longer period because of unique circumstances, Defendant shall not be in default of its obligations hereunder to make distributions so long as it has made reasonable efforts to make or is otherwise prohibited from making payment in accordance herewith to the Class member and/or alternate payees, or to the estate or other appropriate representatives of such deceased Class member.

(d)    Each Class member or beneficiary will be permitted to elect to receive a lump sum payment rather than an annuity in accordance with the provisions of the Plan. A Class member may be required by the Defendant to receive an immediate lump sum payment if the amount of such lump sum payment, as calculated pursuant to all of the provisions of this Section 2.02, does not exceed

$5,000.00 and in such other cases, if any, as the Plan provides, consistent with applicable law.

(e)     At the hearing on the Motion for Judgment and Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees and costs to be paid from the Settlement Fund. Defendant agrees not to oppose Class Counsel's request for fees based on a percentage of the Settlement Fund, and Class Counsel agrees not to seek payment of more than $15,000,000 as and for its attorneys' fees, Administrative Expenses, and costs.

(f)     At the hearing on the Motion for Judgment and Final Approval, Class Counsel shall petition the Court for an incentive award in the amount of $5,000.00 to be paid to the named plaintiff out of the attorneys' fees and costs award.

(g)     At the hearing on the Motion for Judgment and Final Approval, Counsel for Defendant and the Class shall certify to the Court in a declaration, based on personal knowledge, the Class members to whom written notices have been mailed.

**2.03 Payment of Attorneys' Fees, Administrative Expenses, and Costs Award.**  Within ten (10) business days after the Date of Final Judgment, Defendant shall wire transfer the attorneys' fees, Administrative Expenses, and costs awarded by the Court, to Carr Korein Tillery, LLC's Trust Account as directed by Class Counsel. Provided, the pro rata share of the part of the attorneys' fees, Administrative Expenses, and costs attributed to settlement distributions to Current Participants as defined in Section 4.02(a) will be paid to Class Counsel on the earlier of the following dates: (1) the date on which the Plan determines it can lawfully make the payment to Class Counsel; or (2) on each successive December 31st until all attorneys' fees and, Administrative Expenses have been paid, the Plan will send Class Counsel a check as directed by Class Counsel, which is in the pro rata amount

10

attributable to all Current Participants receiving a distribution during that year.

**2.04 Release.**    As part of the consideration for this Agreement, the Parties agree that Judgment pursuant to this Agreement shall constitute a release as set forth in Section 5.01 below.

### III. APPROVAL AND CLASS NOTICE

**3.01 Preliminary Approval by the Court.**    On or before June 14, 2002, the Parties will submit this Agreement to the Court, together with a Motion for Conditional Certification of the Class, a Motion for Preliminary Approval of the Agreement, and attached proposed Notice.

**3.02 Class Notice.**

(a)    Upon entry of an Order Granting Preliminary Approval, Defendant and Class Counsel shall jointly exercise reasonable diligence to identify and establish a database pertaining to the Class members to facilitate this Agreement.  The Class Counsel will be responsible for expenses relating to and for the creation of and preparing the database records to accomplish the Notice and shall further be responsible for mailing the Notice.  The expenses incurred will be considered Administrative Expenses.

(b)    Class Counsel will begin notifying those Class members identified by Defendant and Class Counsel as within the Class ("Confirmed Class member") as soon as reasonably possible by mailing the Notice by first-class mail to the last known address of each such Confirmed Class member as it appears in Defendant's database records.   Class Counsel will also begin notifying participants identified by Defendant and Class Counsel as having received a lump sum payment that may have been paid from the Plan during the relevant period, but who could not be confirmed from the available information as meeting the requirements for a payment under this Agreement ("Lump

11

Sum Recipients"), as soon as reasonably possible by mailing the Notice by first-class mail to the last

known address of each such Lump Sum Recipient as it appears in Defendant's database records. The

Notice shall be in the form approved by the Court.  As to any Confirmed Class member or Lump

Sum Recipient whose notice is returned as undeliverable by the postal authorities, Class Counsel will

exercise reasonable diligence to locate the current address and re-send the notice prior to the hearing

on the Motion for Judgment and Final Approval.

     (c)    Plaintiff shall use its reasonable best efforts to complete the mailing of the Notice to

Class members identified by Defendant and Class Counsel within 30 days of the entry of the Order

Granting Preliminary Approval.

     **3.03 Objections to Settlement.**  Any Class member who wishes to object to the fairness,

reasonableness or adequacy of this Agreement or the settlement must file with the Clerk of the

Court and serve on all counsel, no later than ten days before the hearing on the Motion for Judgment

and Final Approval, a statement of the objection, as well as the specific reason(s), if any, for each

objection, including any legal support the Class member wishes to bring to the Court's attention and

any evidence the Class member wishes to introduce in support of the objection.  Class members may

so act either on their own or through any attorney hired at their own expense.

     If a Class member hires an attorney to represent him/her (at his/her own cost and expense),

the attorney must:

          (a)    File a notice of appearance with the Clerk of Court no later
than fourteen days prior to the hearing on the Motion for
Judgment and Final Approval or as the Court may otherwise
direct, and

(b)    Serve a copy of such notice of appearance an all counsel for the Parties.

Any Class member who files and serves a written objection, as described herein, may appear at the hearing on the Motion for Judgment and Final Approval of this settlement to object to any aspect of the fairness, reasonableness or adequacy of this Agreement or the settlement. Subject to the Court's discretion, any Class member (or attorney) who fails to comply with the provisions of this paragraph and the preceding paragraphs shall waive and forfeit any and all rights the Class member may have to appear separately and/or to object, and shall be bound by all the terms of the Agreement and by all proceedings, orders and judgments in the Litigation.

**3.04 Entry of Judgment.**  At the hearing for Judgment and Final Approval of this settlement, the Parties will request that the Court, among other things, (a) enter Judgment in accordance with this Agreement, (b) approve the settlement and Agreement as final, fair, reasonable, adequate and binding on all members of the Class, (c) approve the payment of attorneys' fees and costs for Class Counsel, (d ) approve the payment of administrative expenses, and (e) approve an incentive award to the named Plaintiff.

**3.05 Effect of Failure to Grant Final Approval.**  In the event the Court fails to enter Judgment in accordance with this Agreement [except for a modification of the percentage figure set out in Section 2.02(e) or incentive award in Section 2.02(f)], or the settlement does not receive Final Approval as defined herein, the Parties shall proceed as follows:

(a)    The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

13

    (b)    In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement.

## IV. DISTRIBUTIONS

**4.01 Distributions.** Defendant will be responsible for making the required distributions as provided for herein. Defendant, in consultation with Class Counsel, will have the authority to make all decisions necessary for the orderly implementation and administration of this Agreement and settlement.

**4.02 Entitlement to, Date and Method of Distribution.**

    (a)    Except as otherwise provided herein, Defendant shall exercise reasonable diligence to make the distributions, or commence or accept deferral elections of the distributions in the case of annuity benefits, if any, to the Class on or about the date that follows by six (6) months the date of Final Judgment (the "Distribution Date").   Defendant may make or commence distributions earlier than the Distribution Date, and may make or commence distributions after the Distribution Date in the case of (i) benefits for which the consent of the participant or other recipient and/or his/her spouse (including any alternate payee treated as a surviving spouse) is determined by the Plan administrator to be necessary to make or commence an immediate distribution, but is not obtained, and (ii) in any of the other circumstances described in Section 2.02(c). Provided further, however, that in the case of any Class member who is a current participant in the Plan ("Current Participant Class Member"), Defendant shall not make payment under this Agreement to that Class member until he would otherwise be eligible under the terms of the Plan to receive a distribution from the Plan. The Plan will apply the amount to which such Class member is entitled under Section 2.02

14

as an addition to the Class member's Account under the Plan as of the date the distribution would have been made if the Class member was not a current participant in the Plan, with such addition to be offset by any pro rata deductions for attorneys' fees, Administrative Expenses, and costs to the extent and at such time as will not jeopardize the Plan's tax-qualified status. Interest under this Agreement stops accruing on any amount described in the preceding sentence on the date of Final Judgment and thereafter will be credited with interest under the terms of the Plan.

(b)    In order for a person within the Class to be entitled to participate in this Agreement and settlement, that Class member must have been a participant in the Plan and also fall within one of the following categories: (i) the person was identified by Class Counsel and Defendant as a Confirmed Class member who was sent written notice by U.S. Mail pursuant to Section 3.02(a) above; or (ii) the person is a Lump Sum Recipient who is confirmed to be a Class member by Class Counsel and counsel for Defendant based on a Claim submitted by that person that was received by Class Counsel before 5:00 p.m., on the (90th) ninetieth day following the date of Judgment and who reasonably cooperated with Class Counsel and Defendant in determining that person's entitlement to all or part of a distribution under this Agreement; or (iii) the person is confirmed to be a Class member by Class Counsel and counsel for Defendant based on a Claim submitted by that person that was received by Class Counsel before 5:00 p.m., on the (90th) ninetieth day following the date of Judgment and who reasonably cooperated with Class Counsel and Defendant in determining that person's entitlement to all or part of a distribution under this Agreement.

(c)    Any Class member or other person who might otherwise be entitled to a distribution under this Agreement, except for the fact that they do not meet the requirement for entitlement to

15

a payment under either 4.02(b)(i) or 4.02(b)(ii) or 4.02(b)(iii), shall not be entitled to participate in this Agreement and settlement or receive any distribution or payment hereunder.

(d)    In the event a Class member or other person to whom a distribution is due (including meeting the requirements of either 4.02(b)(i) or 4.02(b)(ii) or 4.02(b)(iii)) cannot be found within one year of Final Judgment, such payment entitlement amount shall revert to the Plan.  Such payment entitlement amount shall be reinstated if a claim for it is made by the Class member, beneficiary, or other person to whom it was owed within two years from the date of reversion, and, in the sole discretion of the Plan, may be reinstated after this period has closed.

**4.03 Report on Distribution of Payments.**  Within thirty days after the Distribution Date, Defendant shall certify to the Court in an affidavit that all distributions to members of the Class have been timely made (or begun or deferred in the case of annuity payments, if any), or that all distributions have been made or begun or deferred except those listed individuals to whom distributions could not be made or begun, as the case may be, and shall serve a copy of the declaration filed with the Court on Class Counsel. In this affidavit, Defendant shall certify the number of Class members to whom distributions were made or begun.

**4.04 Responsibility for Inquiries of Class Members.**  Defendant shall respond to questions from any Class member concerning that Class member's settlement distribution and Class Counsel shall refer such questions to Defendant.  Class Counsel may respond to any and all inquiries concerning the reasonableness of the settlement and/or Class Counsel's attorneys' fee, disbursements, and costs request and request for an incentive award.

16

## V. RELEASE

**5.01 Release and Covenant Not to Sue.** Upon Final Judgment, Plaintiff and each Class member shall be deemed to forever release, remise, acquit, satisfy and discharge Defendant, including but not limited to all individuals and entities to whom reference is made in the first sentence of paragraph A of the Recitals herein, from any and all manner of actions, or causes of action, accounts, agreements, bills, bonds, claims, contracts, controversies, covenants, damages, debts, demands, dues, executions, judgments, liability, liens, promises, reckonings, specialties, suits, sums of money, trespasses and variances whatsoever and any equitable, legal and administrative relief, whether based on federal, state or local law, statute or ordinance, regulation, contract, common law, or any other source, including any claims relating to any of the foregoing, whether known or unknown, based on or arising out of, or related to, in whole or in part, the determination or payment of lump sum distributions by the Plan, and including but not limited to those claims that are, have been or could have been brought, raised or asserted in the Litigation, or in any similar litigation in this or any other court, jurisdiction, or any administrative or governmental body or agency (including any federal or state regulatory commission), tribunal, arbitration panel or self-regulatory organization.

By operation of the entry of the Judgment and upon Final Approval, Plaintiff and each Class member expressly agree that they, acting individually or together, shall not and shall not seek to institute, maintain, prosecute, sue or assert in any action or proceeding, any action or actions, cause or causes of action, or claim on the basis of, connected with, arising out of, or substantially related to, any of the settled claims including, without limitation, any or all of the acts, omissions, facts,

17

matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in, or related to, the Litigation, including, without limitation, the facts, events and circumstances that are the basis of the allegations raised in the Litigation.  Nothing herein shall preclude any action to enforce the terms of this Agreement.

## VI. DISCOVERY

**6.01 Document Inspection.**  Defendant agrees to make available to Class Counsel any available information reasonably necessary to (i) make the mailing of Notice pursuant to the terms of this Agreement, (ii) verify the amounts of the original lump sum distributions made to Class members as furnished to Class Counsel by Defendant and the amounts distributable to members of the Class pursuant to this Agreement, and (iii) verify the actual payments to Class members pursuant to this Agreement.

## VII. MISCELLANEOUS PROVISIONS

**7.01 Cooperation Between the Parties.**  The Parties shall cooperate fully with each other, and shall use their best efforts to obtain Final Approval of this Agreement and all of its terms.

**7.02 Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.  No waiver, modifications or amendment of the terms of this Agreement, made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, and subject to any required Court approval.

18

**7.03 Construction of Agreement**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms of this Agreement are not intended to be construed against any Party by virtue of draftsmanship.

**7.04 Arm's Length Transaction.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions in their exact form are material to this Agreement and have been relied upon by the Parties in entering into this Agreement. If any Class member petitions the Count for a modification, addition or alteration of any term or condition of this Agreement and if the Court on such request or *sua sponte* does modify, add to or alter any of the terms or conditions of this Agreement, this Agreement shall become voidable and of no further effect upon the filing with the Court of a Notice of Withdrawal from settlement by Class Counsel or by Defendant within five (5) business days of receipt of any order or final statement of the Court modifying, adding to, or altering any of the terms or conditions of this Agreement, provided that no Party may file a Notice of Withdrawal if the Court's only modification consists of an upward or downward adjustment of the percentage figure set out in Section 2.02(e) or the incentive fee set forth in Section 2.02(f).

**7.05 Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties, including all individuals and entities referred to in paragraph A of the Recitals herein, and their respective heirs, successors and assigns. The individuals signing this Agreement on behalf of Defendant hereby represent and warrant that they have the power and authority to enter into this Agreement on behalf of Defendant, on whose behalf they have executed this Agreement,

19

as well as the power and authority to bind Defendant to this Agreement. Class Counsel executing this Agreement represent and warrant that they have the power and authority to enter into this Agreement on behalf of Plaintiff and the putative Class, and to bind Plaintiff and the Class to this Agreement.

**7.06 Waiver.** Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions of this Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**7.07 When Agreement Becomes Effective: Counterparts.** This Agreement shall become effective upon its execution by Defendant or its Counsel and Class Counsel. The Parties may execute this Agreement in counterparts and execution in one or more counterparts shall have the same force and effect as if all Parties had signed the same instrument. If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect. Provided, however, if a court modifies, adds to or alters any of the terms or conditions of this Agreement, this Agreement shall become voidable and of no further effect upon the filing with the Court of a Notice of Withdrawal from settlement by Class Counsel or by Defendant within five (5) business days of receipt of any order or final statement of such Court modifying, adding to, or altering any of the terms or conditions of this Agreement, provided that no Party may file a Notice of Withdrawal if the Court's only modification consists of an upward or downward adjustment of the percentage figure set out in Section 2.02(e) or the incentive fee set forth in Section 2.02(f).

**7.08 No Third-Party Beneficiaries.** This Agreement shall not be construed to create rights in, or to grant remedies to or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary to this Agreement except as otherwise provided in Section 2.02(e) hereof.

**7.09 Further Acts.** Each of the Parties, upon the request of the other Party hereto, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**7.10 Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**7.11 Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of the settlement or this Agreement.

**7.12 Facsimile Signatures.** Any Party may execute this Agreement by signing on the designated signature block below, and transmitting that signature page via facsimile to all counsel. Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement, and shall be binding upon the Party transmitting the signature by facsimile.

Steven A. Katz
Douglas R. Sprong
Carr Korein Tillery, LLC
Three First National Plaza
70 West Madison Street, Suite 410
Chicago, IL 60602-4269
(618) 277-1180
Fax: (618) 277-9804

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Ave.
Denver, CO 80209
(303) 296-6383
Fax: (303) 296-6652

ATTORNEY FOR PLAINTIFF

DATED:  6/14/2002

Mark E. Furlane
Gardner, Carton & Douglas
321 North Clark Street, Ste. 3400
Chicago, IL, 60610-4795
(312) 644-3000
Fax: (312) 644-3381

ATTORNEYS FOR DEFENDANT

DATED: 6/14/2002

22

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
RANDALL NICHOLS v. BP AMERICA RETIREMENT
ACCUMULATION PLAN, NO: 01 C 6238

NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

This Notice is sent to advise you of the proposed settlement of a class action lawsuit that may increase the pension that you previously received from the BP America Retirement Accumulation Plan (the "Plan") only if you are a member of the Class as defined in Paragraph No. 2, below.  READ THIS NOTICE CAREFULLY, IT AFFECTS YOUR LEGAL RIGHTS!

1.   Description of the Lawsuit
     In August 2001 Randall Nichols, a former employee of BP America filed a lawsuit against the Plan.  The lawsuit challenged the actuarial assumptions used to calculate the Class's lump sum distributions. Plaintiff contends that participants' cash balance accounts should have been projected to age 65 at an interest rate equal or approximating the interest crediting rate applied to active accounts in the Plan prior to being present valued at the Internal Revenue Code §417(e) factors.  Defendant has denied and continue to deny this claim, but has agreed to settle the claims and to pay the Class additional money.

2.   Who is in the Class
     "Class" shall mean each participant, beneficiary or alternate payee under the Plan who has received or applied for a lump sum distribution from the Plan on or after January 1, 1989 and to and including the date of Preliminary Approval.  It shall also include any spouse, children, representatives, heirs, administrators, beneficiaries, alternate payees, executors, conservators, attorneys and assigns of a Class member, as applicable and without limitation, of such persons.  Provided, however, the Class shall not include any participants in the Plan who received a lump sum distribution from the Plan where such lump sum was not derived in whole or in part from an "Account" established for the participant under the Plan on or after January 1, 1989 and before January 1, 2002.  Provided also, however, that no Class member can receive a payment under the terms of this settlement to the extent such payment, combined with his original distribution from the Plan, would exceed the amount allowed under Internal Revenue Code Section 415.  Provided also, however, that a person who is otherwise a Class member

1

shall have such status for purposes of this settlement even
though the amount of the payment to him is limited by the
preceding sentence or if payment is postponed under Section
4.02(a) of this Agreement or under the terms of the Plan.
"Account" shall have the meaning given to it in the Plan.

3.    <u>Who Represents the Class</u>
      Steven A. Katz and Douglas R. Sprong, Carr Korein Tillery,
LLC, 10 Executive Woods Court, Belleville, IL 62226, and William
K. Carr, Law Offices of William K. Carr, 2222 E. Tennessee Ave.,
Denver, CO 80209.

4.    <u>Hearing on this Case</u>
      The Court has scheduled a hearing on the fairness of the
proposed settlement on _____, 2002 at _____ a.m. You <u>DO NOT</u>
need to attend.  The location is the Federal Courthouse, John H.
Dirksen Federal Building, Chicago, IL 60606, Judge Rebecca A.
Pallmeyer.

      If you wish to object you <u>must</u> file a written notice with
the following attorneys at least <u>ten</u> (10) days before the
hearing, stating your objections specifically.  You may retain an
attorney to represent you at your own cost and expense.  The
attorney must file a motion to appear in this action with the
Clerk of the Northern District of Illinois at least twenty (20)
days prior to the hearing on the motion to grant final approval
of this settlement, and must serve copies of such motion on
counsel listed below.  Any Class member who does not make and
serve written objections in the manner provided above may be
deemed to have waived such objections and shall be forever
foreclosed from making such objections to the proposed
settlement. Regardless of whether you file objections, you are
free to attend the hearing, but you are not required to attend in
any event.  No party will be heard in opposition to the proposed
settlement and no papers or briefs submitted by any such party
will be accepted or considered by the Court unless on or before
_____, 2002, such party files with the Court notice of his or
her intention to appear together with a statement that indicates
the basis for such opposition and serves copies thereof to the

2

lawyers identified below.

Douglas R. Sprong                  Mark E. Furlane
Carr, Korein, Tillery, LLC         Gardner, Carton & Douglas
P.O. Box 4310                      321 N. Clark Street, Ste. 3400
Fairview Heights, IL 62208         Chicago, IL 60610-4795
Attorney for the Class             Attorneys for Defendant

5.    The Proposed Resolution of this Case
      It has been proposed, and the Court has preliminarily
approved the following resolution of this case:

            A.    As and for the settlement benefit of the Class:

      Each Class member who received a Lump Sum distribution from
the Plan at least in part attributable to an Account established
by the Plan prior to January 1, 2002, will receive a base payment
of $500 plus the benefit, if any, attributable to the Class
member's proportional share of the Net Settlement Fund, with such
proportional share to be determined as follows:  (1) projecting
the Class member's cash balance Account as of his original date
of distribution to age 65, using the lesser of the average of the
Plan's Interest crediting rate for the last five years or 5.5%;
(2) converting the projected amount from (1) to a single life
annuity using the Plan's applicable § 417(e)(3) interest and
mortality factors as of January 1, 1999 (for distributions
occurring prior to the Plan's adoption of GATT) or January 1,
2000 (for distributions occurring after the Plan's adoption of
GATT); (3) determining the present value of the annuity
determined in (2) using the Plan's applicable § 417(e)(3)
interest and mortality factors as of January 1, 1999 (for
distributions occurring prior to the Plan's adoption of GATT) or
January 1, 2000 (for distributions occurring after the Plan's
adoption of GATT); (4) reducing the amount produced in (3) (but
not below zero) by subtracting the Class member's cash balance
Account as of his original date of distribution from the amount
produced in (3); (5) increasing the amount in (4) with interest,
compounded annually, at the interest crediting rate set forth and
defined in Section 3.4 of the Plan as in effect during the period
beginning on the Class member's original date of distribution to
the date Final Judgment is entered; (6) creating a fraction whose
numerator is the amount determined under (5) for the Class member
and whose denominator is the sum of the amounts determined under
(5) for all Class members; (7) multiplying the fraction produced
in (6) by the amount of the Net Settlement Fund.

3

B.    The attorneys for the Class intend to seek attorneys' fees, costs and Administrative Expenses that in the aggregate do not exceed approximately 21% of the total Settlement Fund with interest.  The Court retains discretion to award this or another amount for attorneys' fees and costs.  Defendant will not oppose Class Counsel's request. Class Counsel also intends to seek an incentive award for Randall Nichols of $5,000.00, to be paid out of the attorneys' fee and costs award.

C.    Class Counsel shall bear the costs of notifying the Class.  Defendant shall bear the costs and calculating and distributing the additional amounts to be paid to the Class members based on A and B above, and distributing the funds. Class Counsel shall use their best efforts to verify the accuracy of the calculations.

D.    You will receive additional information after the settlement is finally approved on the form of payment and how to roll over your benefit to a tax deferred account.  Not everyone will be entitled to roll over the benefit.

6.    <u>Legal Effect of the Judgment</u>
This resolution, if approved and entered as a final judgment will bind you and your personal representatives. Neither you nor they will be able to sue BP America or the Plan, or any of their current and former parent corporations, subsidiaries, divisions, affiliated and related entities, fiduciaries, administrators, executors, directors, officers, employees, agents, enrolled actuaries, representatives, attorneys, trustees, conservators, successors-in-interest and assigns, for conduct arising out of the Plan's determination or payment of lump sum distributions.

7.    <u>Exclusion from this Case</u>
Because of the unique nature of this lawsuit involving pension benefits, and under Court Order, you have no right to be excluded from this case; however, you may object to any aspect of this proposed settlement pursuant to Paragraph No. 4.

8.    <u>Claiming your Benefit</u>
A.    If we are able to determine that you are a settlement Class member, you will receive a letter from the Plan approximately 30-60 days after Final Approval of the settlement, together with the forms that need to be returned to claim your

4

money.

    B.    If you are determined not to be a Class member, or
if we are unable to determine whether you are a Class member, you
will be mailed a Notice to that effect approximately 30 days
after final approval.    You will then be given an opportunity to
submit proof of Class membership in writing pursuant to the
Settlement Agreement.

    9.    Additional Information
        The pleadings may be examined at the Courthouse.    If
you have a question, Write (PLEASE DO NOT CALL):
            Douglas R. Sprong
            BP America RAP Settlement
            Carr, Korein, Tillery, LLC
            P.O. Box 4310
            Fairview Heights, IL 62208

    10.    Change of Address
        If your address has changed, please send your old
address and new address, telephone number and Social Security
number to Mr. Sprong at the address noted above.    If you know of
someone who has moved, please provide them with a copy of this
Notice, or notify Mr. Sprong in writing.

        This Notice is sent to you by Order of the Court.
CH02/22193039.1

5

# ATTACHMENT C

**FILED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

JUN 1 4 2002

JUDGE P̶̶̶̶̶̶̶̶LMEYER
UNITED STATES DISTRICT COURT

RANDALL NICHOLS, on behalf of himself    )
and all others similarly situated,    )
    )
    Plaintiff,    )
    )
vs.    )    NO. 01 C 6238
    )    Judge Pallmeyer
BP AMERICA RETIREMENT    )
ACCUMULATION PLAN,    )
    )
    Defendant.    )

**DOCKETED**

JUL 0 1 2002

## MOTION FOR CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS

COME NOW the Parties, by counsel, and pursuant to Rule 23 of the Federal Rules of

Civil Procedure, move for an Order certifying a class for settlement purposes. The Court should

certify a settlement class in this action under Rule 23, Fed.R.Civ.P., because the prerequisites of

Rule 23(a) are met, and the requirements of Rule 23(b)(1) and (2) are also satisfied. In support

of this Motion, the Parties state:

1. This action was instituted under ERISA § 502(a)(3) by Mr. Nichols against the Plan.

The Complaint seeks equitable relief, including restitution, for the Plan's violation of provision

of ERISA, the Internal Revenue Code, and implementing Treasury regulations. In particular,

Plaintiff alleges that the lump sum distribution of his pension benefits from the Plan was less

than the present value of his minimum benefit at normal retirement age. Plaintiff asserts that the

class members' lump sums were computed in the same manner as his. Plaintiff alleges that the

Plan's payment of lump sums as described violates ERISA § 205(g)(3), Internal Revenue Code §

417(e)(3), as implemented by Treasury Regulation 1.417(e)-1(d), and Internal Revenue Code §

411, as implemented by Treasury Regulation 1.411(a). Plaintiff contends that, pursuant to



EXHIBIT

C

25

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), he and the putative class are entitled to a mandatory injunction ordering the Plan administrator to cease computing lump sums as aforesaid in the future.

    2.  As and for the settlement benefit of the Class:

    Each Class member who received a Lump Sum distribution from the Plan at least in part attributable to an Account established by the Plan prior to January 1, 2002, will receive a base payment of $500 plus the benefit, if any, attributable to the Class member's proportional share of the Net Settlement Fund, with such proportional share to be determined as follows:  (1) projecting the Class member's cash balance Account as of his original date of distribution to age 65, using the lesser of the average of the Plan's Interest crediting rate for the last five years or 5.5%; (2) converting the projected amount from (1) to a single life annuity using the Plan's applicable § 417(e)(3) interest and mortality factors as of January 1, 1999 (for distributions occurring prior to the Plan's adoption of GATT) or January 1, 2000 (for distributions occurring after the Plan's adoption of GATT); (3) determining the present value of the annuity determined in (2) using the Plan's applicable § 417(e)(3) interest and mortality factors as of January 1, 1999 (for distributions occurring prior to the Plan's adoption of GATT) or January 1, 2000 (for distributions occurring after the Plan's adoption of GATT); (4) reducing the amount produced in (3) (but not below zero) by subtracting the Class member's cash balance Account as of his original date of distribution from the amount produced in (3); (5) increasing the amount in (4) with interest, compounded annually, at the interest crediting rate set forth and defined in Section 3.4 of the Plan as in effect during the period beginning on the Class member's original date of distribution to the date Final Judgment is entered; (6) creating a fraction whose numerator is the

amount determined under (5) for the Class member and whose denominator is the sum of the amounts determined under (5) for all Class members; (7) multiplying the fraction produced in (6) by the amount of the Net Settlement Fund.

3.   The Federal Courts have consistently endorsed the procedure of conditionally certifying "a tentative or temporary class" for the purpose of settlement.  Mars Steel v. Continental Ill. Nat'l Bank & Trust, 834 F.2d 677, 680 (7th Cir. 1987);  Witford v. First National Bank, 147 F.R.D. 135, 137 (W.D. Ky. 1992); In re Beef Indust. Anti-Trust Litigation, 607 F.2d 167, 173-178 (5th Cir. 1971), cert denied sub nom, Iowa Beef Processors, Inc. v. Meat Price Investigators Assoc., 452 U.S. 905 (1981).

The leading expert on class actions, Professor Herbert B. Newberg, wrote that "temporary settlement classes have proved to be quite useful in resolving major class action disputes". 3 Newberg, Class Actions, §11-27.  The certification of settlement classes in Federal Courts has become routine.  See, e.g., Clark Equipment Co. v. Intn'l Union, 803 F.2d 878, 881 (6th Cir. 1986), cert denied, 480 U.S. 935 (1987); Bowling v. Pfizer, Inc., 143 F.R.D. 141, 157 (S.D. Ohio 1992); Battle v. Liberty Nat'l Life Ins. Co., 770 F.Supp. 1499, 1506 (N.D. Ala. 1991).  Newberg also noted that "a temporary settlement class is nothing more than a tentative assumption indulged in by the Court to facilitate the amicable resolution of the litigation ..." 3 Newberg, Class Actions, §11.27.

The United States Supreme Court recently considered class certification in the context of settlement in Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231 (1997) ("Amchem").  The Amchem Court determined that conditional certification of a class in the context of a settlement is appropriate if the requirements of Rule 23(a) and (b) are met.  Thus,

3

under <u>Amchem</u>, the Court must analyze the requirements of Rule 23(a) and (b), although in the

context of settlement, the issue of whether the action meets the manageability requirement of

Rule 23(b)(3)(D) is irrelevant.  <u>Amchem</u>, 117 S.Ct. at 2248.

4.  Rule 23(a) provides that one or more members of a class may sue or be sued as

representative parties on behalf of all if (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the

representative parties are typical of the claims or defenses of the class; and (4) the representatives

will fairly and adequately protect the interests of the class.  These prerequisites to class

certification, often referred to as numerosity, commonality, typicality, and adequacy of

representation, are met in this action.

a.    <u>Numerosity</u>

The Settlement Class consists of approximately 15,000 members residing in different

judicial districts so that joinder of all members is impracticable.  <u>Newberg on Class Actions</u>,

§3.05, p. 3-23 (1992).

b.    <u>Commonality</u>

Rule 23(a)(2) requires that there be either questions of law or fact common to the class.

Where a question of law involves "standardized conduct by Defendants toward members of the

proposed class, a common nucleus of operative facts is typically presented, and the commonality

requirement is usually met."  <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992).  In this

case, there are both common questions of law (application of ERISA and the Internal Revenue

Code) and common questions of fact (does the Plan's lump sum methodology violate ERISA

and/or the Internal Revenue Code to the participant's detriment). Thus, the commonality requirement is satisfied.

    c.    <u>Typicality</u>

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. The question of typicality is closely related to the question of commonality. <u>Rosario</u>, 963 F.2d at 1018. A class representative's claim is typical "if it arises from the same . . . practice or course of conduct that gives rise to the claims of other class members" and if his "claims are based on the same legal theory." <u>Id.</u> (quoting <u>De La Fuente v. Stokely-Van Camp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983).

Here, Mr. Nichols' claim arises from the same practice or course of conduct (the lump sum methodology) that gives rise to the claims of other class members. The lump sum methodology used to calculate Mr. Nichols' distribution is identical to the methodology used to calculate the lump sums paid to the rest of the class members. In sum, Plaintiff's claims are typical of those of the proposed class. <u>E.g.</u> <u>Chicago Retired Police Association</u>, 7 F.3d at 497 (quoting <u>Newberg on Class Actions</u>, Section 1115(b) at 185 (1977)).

    d.    <u>Adequacy of Representation</u>

Rule 23(a)(4) requires that the named Plaintiff fairly and adequately protect the interests of the members of the class. Adequate representation has two components: (1) adequacy of the named Plaintiff, and (2) adequacy of the named Plaintiff's attorney. <u>Retired Chicago Police Association</u>, 7 F.3d at 598.

Mr. Nichols' interests are the same, and not in conflict with the other members of the class. He seeks application of ERISA in a manner that would benefit each member of the class.

The second component requires the representative attorney to be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously. Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 309 (N.D. Ill. 1995). Plaintiff's counsel is suitably qualified to prosecute this litigation. See Cooper v. IBM Personal Pension Plan, CV No. 99- -GPM (S.D. Ill. September 17, 2001) (order granting class certification in ERISA case and appointing Plaintiff's attorneys class counsel for the Cooper class); Richardson v. Retirement Plan for Employees of Fairchild Space & Defense Corporation, No. 1:CV 99-1867 (M.D. Pa. May 1, 2001) (order granting class certification in ERISA case and appointing Plaintiff's attorneys class counsel for the Richardson class); Berger v. Xerox Retirement Income Guarantee Plan, CV No. 00-584-DRH (S.D. Ill. February 7, 2001) (order granting class certification in ERISA case and appointing Plaintiff's attorneys class counsel for the Berger class); Laurenzano v. Blue Cross & Blue Shield of Massachusetts, Inc. Retirement Income Trust, No. 99CV11751 WGY (D. Mass. February 4, 2000) (order granting class certification in ERISA case and appointing Plaintiff's attorneys class counsel for the Laurenzano class); Malloy v. Ameritech Pension Plan, CV No. 98-488-GPM (S.D. Illinois, September 29, 1999) (order granting class certification in ERISA case and appointing Plaintiff's attorneys class counsel for the Malloy class); Esden v. Bank of Boston Retirement Plan, 182 F.R.D. 432 (D. Vt. 1999) (order granting class certification in ERISA case and appointing Plaintiff's attorneys class counsel for the Esden class); Seifert v. May Department Stores Company Retirement Plan, CV No. 96-1028-GPM (S.D. Illinois, March 20, 1998) (order granting class certification in ERISA case and appointing Plaintiff's attorneys class counsel for the Seifert class); Asbury v. May Department Stores

<u>Company Retirement Plan</u>, Civil No. 97-667-GPM (S.D. Illinois, September 17, 1998) (same);

<u>Pierce v. Goldkist</u>, Civil No. 97-P-0748 (N.D. Ala. 1997) (same).

        5.    Rule 23(b)(1) allows maintenance of a class action where the requirements of Rule

23(a) are met and the prosecution of separate actions would create a risk of

> "(A) inconsistent or varying adjudications or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . ."

        Numerous ERISA cases have been certified under Rule 23(b)(1).  See <u>Malloy</u>, <u>supra</u>;

<u>Kohl</u>, <u>supra</u> ; <u>Seifert</u>, <u>supra</u>; <u>Asbury</u>, <u>supra</u>; <u>Pierce</u>; <u>supra</u>; <u>Becher v. Long Island Lighting Co.</u>,

164 F.R.D. 144, 153 (E.D.N.Y. 1996) ("Failure to certify the class could result in multiple suits

regarding the trustees' interpretation of the LILCO Plan.  Each case could conceivably result in

different courts reaching conflicting decisions regarding not only the Plan's interpretation but

also the applicability of the various defenses the defendants seek to interpose."); <u>Schutte v.</u>

<u>Maleski</u>, 1993 WL 218898, *8 (E.D. Pa., June 18, 1993) (declaration as to validity of plan

amendment "could potentially create conflicts for the defendants to implement any one result

because of the inherent conflict from disparate adjudications"); <u>Dennis v. Sawbrook Steel</u>

<u>Castings Co.</u>, 1991 WL 260442, *3 (S.D. Ohio, Feb. 13, 1991) ("If a class is not certified in this

case, ninety-five potential plaintiffs could bring ninety-five actions in a variety of courts across

the country.  The defendants' challenged actions are clearly either legal or illegal as to all

members of the class..."); <u>Halford v. Goodyear Tire & Rubber Co.</u>, 161 F.R.D. 13 (W.D.N.Y.

1995); <u>Church v. Consolidated Freightways, Inc.</u>, 1991 WL 284083 (N.D. Cal. 1991); <u>Vollmar v.</u>

CSX Transportation, Inc, 705 F. Supp. 1154 (E.D. Va. 1989); Pension Benefit Guarantee

Corporation v. LTV Corp., 122 F.R.D. 436 (S.D.N.Y. 1988); Jansen v. Greyhound Corporation,

692 F. Supp. 1022 (N.D. Iowa 1986); Mamula v. Satralloy, Inc., 578 F. Supp. 563 (S.D. Ohio

1983); Stewart v. National Shopmen Pension Fund, 563 F. Supp. 773 (D.D.C. 1983); Capital

Cities/ABC, Inc. v. Ratcliff, 1996 WL 571614 (D. Kan. 1996); Eardman v. Bethlehem Steel

Corporation Employee Welfare Benefit Plan, 607 F. Supp. 196 (W.D.N.Y. 1985).

　　　　In the case at bar, the requirements of Rule 23(b)(1)(A) are met in that there is a risk that

the prosecution of separate actions would establish incompatible standards of conduct for the

administrator of the Plan.  The class is, therefore, certifiable under Rule 23(b)(1)(A).  Moreover,

adjudication of whether the Plan properly calculated Plaintiff's lump sum (including the proper

amount of interest owed) would as a practical matter be dispositive of the interests of the class

such that certification is appropriate under Rule 23(b)(1)(B).

　　　　6.  Rule 23(b)(2) allows maintenance of a class action where the requirements of Rule

23(a) are met and in addition

> "(2) the party opposing the class has acted or refused to act on grounds generally
> applicable to the class, thereby making appropriate final injunctive relief or
> corresponding declaratory relief with respect to the class as a whole ..."

In this case, the lump sums of each Plan participant have been computed using the same

challenged methodology.  Plaintiff accordingly seeks injunctive and corresponding declaratory

relief under ERISA § 502(a).

　　　　Again, numerous courts have certified ERISA classes under Rule 23(b)(2).  Dameron v.

Sinai Hospital, 595 F. Supp. 1402, 1409 (D. Md. 1987) (in calculating pension distributions in a

particular manner, the "defendants have acted on grounds generally applicable to the class

making injunctive and declaratory relief appropriate, the class is an appropriate one for

certification under Fed.R.Civ.P. 23(b)(2)."); Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101 (5th

Cir. 1993) (class certified in ERISA benefits case under 23(b)(2)); Malloy, supra; Kohl, supra;

Seifert, supra; Asbury supra; Pierce supra; Shields v. Local 705, Intern. Broth. Of Teamsters,

1996 WL 616548 *5 (N.D. Ill., Oct. 23, 1996) (class certified under Rule 23(b)(2) where plaintiff

sought mandatory injunction directing defendant to immediately pay plaintiff and the class all

benefits they were entitled to under the plan); Walsh v. Northrop Grumman Corp., 162 F.R.D.

440, 448 (E.D.N.Y. 1995); Breedlove v. Tele-Trip Co., Inc., 1993 WL 284327, *10 (N.D. Ill.,

June 27, 1993) (class certification proper where plaintiff sought benefits through a declaration

that class members were covered and an injunction ordering service credit to class members);

Church v. Consolidated Freightways, Inc., 1991 WL 284083 (N.D. Cal., Jun 14, 1991)

(certification of an ERISA-type claim proper under Rule 23(b)(1)(B) and (b)(2) where relief

sought would require defendants to compensate injured class members and cease from prohibited

conduct in the future); Jansen v. Greyhound Corp., 692 F. Supp. 1022 (N.D. Iowa 1986) (class

certified under Rule 23(b)(2) where retroactive payment of benefits would flow from injunctive

relief requested); Musto v. American General Corp., 615 F. Supp. 1483, 1493 (M.D. Tenn. 1985)

(Rule 23(b)(2) applicable to claim including monetary relief where employer acted uniformly in

its treatment of all retirees' retirement benefits); Morgan v. Laborers Pension Trust Fund, 81

F.R.D. 669, 681 (N.D. Cal. 1979) (Rule 23(b)(2) certification appropriate where monetary relief

is integrally related to and would directly flow from injunction or declaratory relief).

WHEREFORE, the Parties pray the Court conditionally certify this case as a class action

for settlement purposes only with the settlement class being:

"Class" shall mean each participant, beneficiary or alternate payee
under the Plan who has received or applied for a lump sum distribution
from the Plan on or after January 1, 1989 and to and including the date
of Preliminary Approval.  It shall also include any spouse, children,
representatives, heirs, administrators, beneficiaries, alternate payees,
executors, conservators, attorneys and assigns of a Class member, as
applicable and without limitation, of such persons.  Provided, however,
the Class shall not include any participants in the Plan who received a
lump sum distribution from the Plan where such lump sum was not derived
in whole or in part from an "Account" established for the participant
under the Plan on or after January 1, 1989 and before January 1, 2002.  Provided
also, however, that no Class member can receive a payment under the terms
of this settlement to the extent such payment, combined with his original
distribution from the Plan, would exceed the amount allowed under Internal
Revenue Code Section 415.  Provided also, however, that a person who
is otherwise a Class member shall have such status for purposes of this
settlement even though the amount of the payment to him is limited by
the preceding sentence or if payment is postponed under Section 4.02(a)
of this Agreement or under the terms of the Plan.  "Account" shall have
the meaning given to it in the Plan.

Plaintiff further prays the Court to appoint and designate Randall Nichols as class

representative, and Steven A. Katz and Douglas R. Sprong, of the law firm of Carr Korein

Tillery, LLC, 10 Executive Woods Court, Belleville, Illinois, and William K. Carr, Law Offices

of William K. Carr, 2222 E. Tennessee, Denver, Colorado, as counsel for the class.

10

CARR KOREIN TILLERY, LLC

_____
Steven A. Katz
Douglas R. Sprong
10 Executive Woods Court
Belleville, Illinois 62226
(618) 277-1180
Fax: (618) 277-4676

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383
(303) 296-6652 (facsimile)

Attorneys for Plaintiff

_____
Mark E. Furlane
Gardner, Carton & Douglas
321 North Clark Street, Ste. 3400
Chicago, IL, 60610-4795
(312) 644-3000
Fax: (312) 644-3381

Attorneys for Defendant

CH02/22193038.1

11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

JUL 0 1 2002

RANDALL NICHOLS, on behalf of himself    )
and all others similarly situated,    )
    )
    Plaintiff,    )
    )
vs.    )    NO. 01 C 6238
    )    Judge Pallmeyer
BP AMERICA RETIREMENT    )
ACCUMULATION PLAN,    )
    )
    Defendant.    )

**F I L E D**

JUN 1 4 2002

JUDGE REBECCA R. PALLM
UNITED STATES DISTRICT C

## MOTION FOR PRELIMINARY APPROVAL OF
## CLASS ACTION SETTLEMENT

COME NOW the Parties, by counsel, and move for preliminary approval of a Settlement

Agreement in the above-styled case.

1.    The proposed settlement agreement and the Parties' Memorandum of Law is filed

herewith and incorporated herein by reference.

WHEREFORE, the Parties pray this Court grant preliminary approval to the Settlement

Agreement, approve the notice plan, set a date for a final approval hearing, and for all other relief

that this Court deems just and proper.

CARR KOREIN TILLERY, LLC

By _____
Steven A. Katz
Douglas R. Sprong
Carr Korein Tillery, LLC
10 Executive Woods Court
Belleville, IL 62226
(618) 277-1180
(618) 277-9804 (facsimile)

24

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383
(303) 296-6652 (facsimile)

Attorneys for Plaintiff

and

Mark E. Furlane
Gardner, Carton & Douglas
321 North Clark Street, Ste. 3400
Chicago, IL, 60610-4795
(312) 644-3000
Fax: (312) 644-3381

Attorneys for Defendant

CH02/22193035.1

2

FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

JUN 1 4 2002

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

RANDALL NICHOLS, on behalf of himself )
and all others similarly situated, )
)
    Plaintiff, )
)
vs. )    NO. 01 C 6238
)    Judge Pallmeyer
)
BP AMERICA RETIREMENT )
ACCUMULATION PLAN, )
)
    Defendant. )

**DOCKETED**

JUL 0 1 2002

MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I. Introduction

This memorandum is submitted in support of the proposed settlement of a class action

case pending before this Court. As outlined below, this Court should preliminarily approve the

settlement agreement attached hereto because the proposed resolution is fair, reasonable, and

within the range of possible final approval by this Court.

II. Discussion

A. Factual Background

On August 14, 2001, Plaintiff Randall Nichols filed this action contending that the Plan

miscalculated his lump sum pension distribution, and the lump sum distributions of the Class, by

failing to project cash balance accounts to age 65 at an interest rate that did not understate the

value of the Plan's interest crediting rates and then discount the projected balances at an interest

rate(s) required by Internal Revenue Code § 417(e). During the course of the Litigation Plaintiff

also claimed that the Defendant did not administer the Plan in accordance with its terms.

24

For approximately the last year, the parties have been engaged in arms' length discussion regarding possible resolution of this matter. These discussions have not been typical settlement discussions; instead, the parties have conducted significant discovery into the scope and identity of the putative class, prepared a data spreadsheet to begin compiling the putative class member's individual pension data, hand entered that data into a spreadsheet for over a 1,000 class members, analyzed that data, exchanged voluminous documents regarding the verison of the Plan over the last twelve years and the distributions to the class members from same, exchanged lengthy "position papers" and briefs regarding the merits of the litigation and the defenses thereto, and met and conferred as to the various mechanics of a settlement mechanism vis-a-vis the nature of the Defendant (a defined benefit pension plan).

The parties have also participated in two settlement conferences with Magistrate Judge Denlow in Chicago, and had numerous other meetings and conference calls in an effort to arrive at a settlement. At the close of the last settlement conference with Judge Denlow, the parties reached an agreement in principle. The parties spent the last month working out the details of the proposed settlement and drafting the attached Settlement Agreement.

In general, the proposed settlement provides each Class member with a proportional share of a Settlement Fund of $71,000,000, plus an interest component. The proportional share will be calculated utilizing the greater of the additional benefit produced by application of a modified "whipsaw" computation or $500.[1]

---

[1] The Plaintiff's case is a "whipsaw" case. See, e.g., Esden v. Bank of Boston, 223 F.3d (2nd Cir. 2000). The proportional share calculation is not designed to replicate the whipsaw calculation that Plaintiff contends is required by law. It is used in the proposed settlement to determine a settlement benefit that is "whipsaw" related.

B. Legal Analysis

     With respect to settlement of class actions the Seventh Circuit's position is well-

established:

> "It is axiomatic that the Federal Court's look with great favor upon the voluntary
> resolution of litigation through settlement. [Citations]. 'In the class action context in
> particular, there is an overriding public interest in favor of settlement'.

Armstrong v. Board of School Directors of the City of Milwaukee, 616 F.2d 305, 312 (7th Cir.

1980). The Armstrong Court described the procedure that a district court should use in

reviewing proposed class action settlements:

> "District court review of a class action settlement proposal is a two-step process. The
> first step is a preliminary, pre-notification hearing to determine whether the proposed
> settlement is 'within the range of possible approval.' This hearing is not a fairness
> hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class
> members of the proposed settlement and to proceed with a fairness hearing. Manual for
> Complex Litigation §1.46, at 53-55 (West, 1977). If the district court finds a settlement
> proposal is 'within the range of possible approval' it then proceeds to the second step in
> the review process, the fairness hearing."

Armstrong, Supra, at 314. See also Newberg on Class Actions, (3d Ed. 1992), §11.25, p. 11.37

and Manual for Complex Litigation, Third, §30.41, pp. 236-237 (1995).

     There is no question the proposed settlement is within the range of possible approval.

While the Class Plaintiff believes his position is strong, there is no guarantee of victory at the

district court or appellate level, and the litigation process itself can be protracted. Defendant has

raised a host of defenses which, if accepted by this Court or the Seventh Circuit, would result in

some or all of the putative class members receiving no additional benefits, or some or all of the

putative class members receiving vastly reduced benefits. In contrast, the proposed settlement, if

approved, will provide quick payment of millions of dollars of additional retirement benefits to

the Class members.  The benefits individual Class members will receive from the proposed

settlement are very substantial (typically thousands of dollars of pension monies).  This action

has been efficiently resolved, and the Class members should be notified of the proposed

settlement and the Court should proceed with a fairness hearing.

### III.  Conclusion

The proposed settlement is fair, reasonable, and within the range of possible approval.

There is ample reason to notify the Class members of the proposed settlement and to proceed

with a fairness hearing.

CARR KOREIN TILLERY, LLC

Steven A. Katz
Douglas R. Sprong
10 Executive Woods Court
Belleville, Illinois  62226
(618) 277-1180
Fax:  (618) 277-4676

William K. Carr
Law Offices of William K. Carr
2222 E. Tennessee Avenue
Denver, CO 80209
(303) 296-6383
(303) 296-6652 (facsimile)

Attorneys for Plaintiff

Mark E. Furlane
Gardner, Carton & Douglas
321 North Clark Street, Ste. 3400
Chicago, IL, 60610-4795
(312) 644-3000
Fax: (312) 644-3381

Attorneys for Defendant

CH02/22193034.1